## Bomboy v. Erie Airways Inc.

*William J. Kelly* and *Craig A. Markham,* for plaintiffs.

*William A. Pietragallo,* for defendant Erie Airways Inc.

*James D. McDonald,* for defendant Scranton Aluminum Manufacturing Company and 84 Lumber Company.

*Will J. Schaaf* and *Fran J. Klemensic,* for defendant Utica Metal Products.

JIULIANTE, *J.,* September 12, 1988 — Richard Bomboy was seriously injured on February 17, 1982, when he fell from an extension ladder during the course of his employment. In this action, Richard and Alice Bomboy sued defendant Erie Airways Inc. for negligence and defendants Scranton Aluminum Manufacturing Company and 84 Lumber Company on theories of negligence and strict liability in the design, manufacture and sale of the accident ladder. Utica Metal Products was joined as an additional defendant because it was the supplier of the original feet on the ladder. A jury trial occurred in May 1987. A directed verdict was entered as to additional defendant, Utica Metal Products, at the close of the defendants' case and the jury reached a verdict of no liability as to the remaining defendants. Plaintiffs thereafter filed timely post-trial motions in regard to the verdict for defendants Erie Airways Inc., Scranton Aluminum Manufacturing Company and 84 Lumber Company. The directed verdict in favor of Utica Metal Products has not been appealed nor is it the subject of post-trial motions.

### Errors in the Case Against Scranton Aluminum

At trial, plaintiffs proceeded against Scranton on the theory that Richard Bomboy fell because the ladder slipped out from under him. Plaintiffs alleged at trial that defendant Scranton had manufactured the ladder with inadequate slip resistance and lack

of warnings of this defect. On the issue of low slip resistance, plaintiffs presented the testimony of Professor Howard Wilson, who stated his opinion that a new Scranton ladder equipped with the original feet did not provide an adequate margin of safety, that the accident ladder was dangerous because it had a low coefficient of friction and that the accident ladder with the original feet would have been defective in the area of slip resistance. Scranton presented evidence that Scranton ladders equipped with the original feet passed slip resistance tests designed and sanctioned by the American National Safety Institute.

Initially, Scranton's evidence of compliance with ANSI test standards, even if inadmissible in Scranton's case in chief, appears to be proper rebuttal where plaintiffs first put in evidence of testing in accordance with ANSI standards. However, even in its case in chief, the defendant's evidence of ANSI test standards is properly admissible on the issue of causation. Plaintiffs' theory at trial was that the accident ladder, equipped with replacement feet, slipped during normal use. By bringing in evidence of testing with the original feet, plaintiffs attempted to prove that the ladder would have slipped regardless of this substantial alteration in the product. Defendant then offered evidence of compliance with ANSI testing standards, not for the purpose of showing lack of defect, but for the purpose of showing that the accident ladder did not slip, defective or not. The import of Scranton's testimony was that in its original condition, the accident ladder would not have slipped under the conditions present at the time and place of Richard Bomboy's accident. Defendant's position was that even if the ladder was defective, the defect did not cause the accident.

This court is aware that in *Lewis v. Coffing Hoisting Division,* 515 Pa. 334, 528 A.2d 590 (1987), decided after the trial of this case, the Supreme Court of Pennsylvania held that evidence of industry standards as to the design of the product at issue there was properly excluded at trial. The court's concern in *Lewis* was the defendant's attempt to defeat a claim of defect in its product by establishing that over 90 percent of manufacturers were using the same design. Such evidence is not only inconclusive on the issue of whether the manufacturer was reasonable and therefor not negligent in its design choice, but also tends to focus the jury on the conduct of defendant rather than the attributes of the product it makes.

Without deciding the retroactive effect of the *Lewis* decision, the present holding does not offend the reasoning of the court in *Lewis.* First of all, evidence of standards of the American Society of Mechanical Engineers in *Lewis* was excluded as irrelevant because "the ASME publication was totally silent on the subject of the design and guarding of buttons on the control pendants of electric hoists," the particular defect asserted in *Lewis, supra.* The expert testimony that "at least 90 percent of the electric hoists made in this country had control boxes devoid of any type of guard around the activating buttons" was excluded as improperly injecting negligence concepts into a case based entirely on strict liability under section 402A of the Restatement (Second) of Torts. *Lewis, supra.*

It is apparent that the exclusion of this expert testimony regarding industry custom served as the basis for the court's opinion. As Justice Larsen said in his concurrence, the court made clear in *Lewis* that a manufacturer of unsafe products cannot escape liability because "the other guys do it too."

*Id.* Therefore, defendant manufacturer in *Lewis* would not be permitted to argue that his unsafe product was on a par with all others available. In the present case, *Lewis* would apply if Scranton had proven at trial that their ladder, despite having slipped while Bomboy was working on it, was nonetheless safe because it was in compliance with ANSI standards or because it was as good as other ladders. But here, defendant proved that its ladder would not slip and in effect rebutted the plaintiff's testimony that the low slip resistance of the ladder caused the fall. We conclude that it was not error to permit evidence of compliance with ANSI test standards as it was relevant to the issue of causation.

Plaintiffs next assign error to the court's having permitted testimony regarding the contributory negligence of plaintiff Richard Bomboy. The court permitted the testimony and instructed the jury regarding contributory negligence on the authority of *Foley v. Clark Equipment Company*, 361 Pa. Super. 599, 523 A.2d 379 (1987), alloc. den. 531 A.2d 780 (1987). Plaintiff in *Foley* was injured when he was struck by a forklift. Plaintiff claimed defective design of the forklift which hampered the operator's visibility. The defense asserted was that the accident was caused by the inattentiveness of either plaintiff, the forklift operator, or both. The defendant in *Foley* argued on appeal that the trial court erred in excluding testimony regarding plaintiff's actions prior to the collision. The Superior Court said:

"The trial court correctly concluded, under existing law, that negligence principles generally are not to be injected into an action based upon the theory of strict products liability. . . . This does not mean, however, that evidence concerning the negligence of the plaintiff and of other individuals involved in a

product-related accident cannot be considered for any purpose. On the contrary, evidence of another's negligent conduct is admissible where it is relevant to establish causation." 361 Pa. Super. at 626, 523 A.2d at 393 (1987). (citations omitted) Thus, the court in *Foley* held that it was error for the trial court to have excluded evidence of the plaintiff's and forklift operator's inattentiveness because it may have been the legal cause of the accident.

Similarly, in the present case Scranton defended on a theory of lack of causation. In order to recover under section 402A of the Restatement (Second) of Torts, plaintiffs here were required to prove (1) that the product was defective and (2) that the defect was the proximate cause of the injury. Scranton defended on the basis that the accident was caused by some circumstance other than the ladder's having slipped, namely either Richard Bomboy's placing the top of the ladder on a soft, uneven surface and leaning excessively to the left side or the low coefficient of friction of the replacement pads placed on the ladder by Bomboy's employer. Evidence of Bomboy's actions prior to the fall was certainly admissible on the issue of causation.

Furthermore, *Staymates v. ITT Holub Industries,* 364 Pa. Super. 37, 527 A.2d 140 (1987), does not require a different holding. The court there was asked to decide whether comparative negligence principles should be applied to apportion damages in strict liability cases; that is, should a manufacturer's liability — which does not depend on fault — be tempered by the fault of plaintiff in acting negligently? The court in *Staymates* held that comparative negligence principles should not be applied to the law of strict products liability. *Staymates* does not hold that the negligence of plaintiff or any other actor cannot be considered on the issue of causa-

tion. Scranton is not arguing here that the actions of Richard Bomboy or his employer made a defective product less defective; Scranton showed only that its allegedly defective product was not the cause of the accident. We find no error in having permitted the testimony and instructing the jury accordingly.

Plaintiff also contends that there was no evidence to show that Bomboy assumed the risk of the ladder slipping and that the court therefore erred in instructing the jury on this doctrine. For the reasons to be discussed below, we find no error on this point.

## Errors in the Case Against Erie Airways

Plaintiff contends that the court's instruction to the jury regarding the liability of Erie Airways Inc., as the employer of an independent contractor was erroneous. "The primary purpose of a court's charge to the jury is to apprise the members of the jury, in an understandable manner, of the legal principles by which they must decide the case. The law is well settled that the trial court is not required to use any prescribed language in performing this function." *Hawthorne v. Dravo Corporation,* 352 Pa. Super. 359, 508 A.2d 298 (1986). In order for a party to be entitled to a new trial, "the instructions complained of must be fundamentally in error, and it must appear that the erroneous instructions might have been responsible for the verdict." *McCann v. Amy Joy Donut Shops,* 325 Pa. Super. 340, 472 A.2d 1149 (1984). (citations omitted) It is well settled that courts consider the charge to the jury in its entirety to determine whether or not error was committed and whether the error was prejudicial to the complaining party. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985).

In viewing the charge here in its entirety, we conclude that the jury was adequately instructed regarding the possible liability of Erie Airways Inc. as an employer of an independent contractor. The court informed the jury that Erie's liability would be premised on a peculiar risk or a special danger involved in the work to be performed which was foreseeable and recognizable by a reasonable man. This is a proper statement of Pennsylvania law. *Marshall v. Southeastern. Pennsylvania Transportation Authority,* 587 F.Supp. 258 (E.D. Pa. 1984); *Ortiz v. Ra-EL Development Corporation,* 365 Pa. Super. 48, 528 A.2d 1355 (1987). We find no error in the court's instruction on this doctrine.

The court also instructed the jury regarding the defense of assumption of risk. Plaintiff contends that this was error because the defense is no longer available under Pennsylvania law. The Pennsylvania Supreme Court in *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983), held that the defense of assumption of risk was available in a negligence action which was based on a duty owned by the possessors of land to invitees thereon. The court pointed out that to say plaintiff in *Carrender* assumed the risk by voluntarily encountering a known danger was "simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers." 503 Pa. at 188, 469 A.2d at 125 (1983). In the present case, the assertion that Richard Bomboy assumed the risk is simply another way of saying that Erie Airways Inc. is relieved of any duty it had to advise him of a peculiar risk involved in the use of the ladder to repair the heater. There was evidence presented from which the jury could conclude that Richard Bomboy realized and voluntarily assumed the inherent dangers of using the ladder as he did. Therefore,

we conclude that it was not error to instruct the jury on the application of the doctrine.

## Errors Regarding Jury Selection

Plaintiff sought to ask prospective jurors whether they or any member of their immediate families had ever been employed in the insurance industry and whether the prospective jurors had an opinion as to the cause of the "insurance crisis." The court refused to permit those questions on the authority of *Bentivoglio v. Ralston,* 447 Pa. 24, 288 A.2d 745 (1972), wherein the trial court refused similar questions for the reason that "the proposed questions would needlessly interject the element of insurance coverage into the case." 447 Pa. at 31, 288 A.2d at 749. As in *Bentivoglio,* plaintiffs here have not asserted that the jury was not fair and impartial and we perceive no error in having excluded the proposed questions.

Likewise, the decision whether to strike jurors for cause is committed to the sound discretion of the trial court and absent a showing that the jury was not fair and impartial, we regard any errors made in the various decisions to strike or not strike jurors as harmless.

## Jury Instructions Regarding Wet Floor

Finally, plaintiff contends that the court erred by instructing the jury to disregard any evidence of the effect of grease or water on the hangar floor. This was not error, as the evidence — including the testimony of Richard Bomboy — all supported the conclusion that Richard Bomboy placed the ladder on a clean, dry floor. To instruct the jury that they could consider whether water had run onto the floor under the ladder would be impermissible speculation and surmise on their part. See *Farnese v.*

*Southeastern Pennsylvania Transportation Authority,* 338 Pa. Super. 130, 487 A.2d 887 (1985).

For all the foregoing reasons, the court finds that plaintiffs are not entitled to entry of judgment in their favor or the grant of a new trial.

## ORDER OF COURT

And now, September, 12, 1988, upon consideration of the motion for post-trial relief filed on behalf of plaintiffs, it is hereby ordered, adjudged and decreed that the motion be and hereby is denied.