685 A.2d 129

**Edward and Janet BARRETT, Appellants,**

**v.**

**FREDAVID BUILDERS, INC., and Safeguard Roofing Systems, Inc.**

Superior Court of Pennsylvania.

Submitted June 4, 1996.

Filed Oct. 9, 1996.

Reargument Denied Dec. 10, 1996.

W. James Jakobowske, Philadelphia, for appellants.

Elizabeth F. Walker, King of Prussia, for Fredavid, appellee.

Gregory E. Cassimatis, Harrisburg, for Safeguard, appellee.

Before CAVANAUGH, SAYLOR and HESTER, JJ.

HESTER, Judge:

Edward and Janet Barrett appeal the October 31, 1995 order wherein the trial court granted summary judgment to appellees, Fredavid Builders, Inc. ("Fredavid") and Safeguard Roofing Systems, Inc. ("Safeguard"). The trial court granted summary judgment based upon its conclusion that Mr. Barrett voluntarily assumed the risk of his injuries. We reverse.

Appellants instituted this action to recover for injuries which they sustained as a result of a fall which Mr. Barrett suffered on October 25, 1990. Mr. Barrett fell while working as an insulator for Premier Insulation Company at a construction site for single family dwellings located at Bentley and Philmont Avenues in Philadelphia. Fredavid was the general contractor in charge of the site, and Safeguard was the subcontractor which installed siding on the housing units.

Only one subcontractor was permitted to work on the site at any time. Prior to Mr. Barrett's fall, Safeguard employees had been installing siding and had stacked the siding in the garage of lot number sixteen, where Mr. Barrett was scheduled to work. Safeguard failed to remove the materials, and Fredavid had failed to inspect the garage before Mr. Barrett arrived.

On the day of the incident, Mr. Barrett proceeded to lot number sixteen to install insulation. When he went into the garage, he observed the vinyl siding, exterior foam board insulation, sheet rock, and plywood. Mr. Barrett cleared a path around the perimeter of the garage so that he could install the insulating materials. He put on his stilts, which are two feet high, and when he almost had completed insulating the garage, he slipped and fell on a small piece of exterior foam board insulation and vinyl siding.

Based on Mr. Barrett's deposition, the trial court granted summary judgment to appellees. That deposition indicates

the following. When Mr. Barrett arrived at the job site, he saw debris covering most of the garage floor. The debris consisted of boxes of vinyl siding and pieces left over from cutting the siding. In addition, there was exterior insulation, which is a foam substance. Finally, sheet rock and plywood were in the garage.

Mr. Barrett was asked the following questions:

Q. When you saw all these items in there and things laying around, what were you thinking?

A. At the time, I took the time to clean it up.

Q. How did you do that? Did you take the stilts off?

A. Yes, I did. I took most of the stuff, stood it up against the wall, gave myself a walking path almost like a horseshoe walking path around where I had room. Then I got back on the stilts to do my job.

Q. How much of a walking path did you leave yourself in this horseshoe; how wide was it?

A. Wide enough for me to get through.

Q. What do you mean by that? Do you mean three feet?

A. I'd say at least three feet, yes.

(Indicates width with hands.)

Q. You said to clean up you had taken your stilts off?

A. Yes.

Edward Barrett deposition, 10/26/93, at 39–40. Mr. Barrett was asked why he did not inform a supervisor of the situation, and he responded that there was no supervisor present at the job site eighty to ninety percent of the time and that he did not want to take the time to locate the supervisor since he was working piecemeal rather than being paid hourly. It took Mr. Barrett fifteen to twenty minutes to clean up, which he did to "prevent an accident." *Id.* at 41. When Mr. Barrett fell he was looking up at his insulation work and was not looking down at the floor. After he fell, he lay on the ground approximately ten minutes and then looked around for what had caused him to fall. He discovered that pieces of exterior vinyl siding insulation had caused the stilts to slip.

■ Under the doctrine of assumption of the risk, a defendant is relieved of its duty to protect a plaintiff where the plaintiff has voluntarily and deliberately proceeded to face a known and obvious risk and therefore is considered to have assumed liability for his own injuries. Our Supreme Court on occasion has affirmed a trial court's decision that as a matter of law, a plaintiff voluntarily proceeded in the face of a known risk and absolved the defendant from responsibility for the injuries sustained. *Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993) (four justices concurring in this portion of holding); *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983).

■ However, the determination that the plaintiff has assumed the risk of his injuries such that recovery is prevented should occur only where it is beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition. *Struble v. Valley Forge Military Academy*, 445 Pa.Super. 224, 665 A.2d 4 (1995); *Long v. Norriton Hydraulics Inc.*, 443 Pa.Super. 532, 662 A.2d 1089 (1995).

In *Carrender v. Fitterer, supra*, an invitee parked on the landowner's parking lot on a sheet of ice even though the rest of the parking lot had been cleared of snow and ice. The invitee wore a prosthesis, became aware of the ice before exiting her car, and also was aware that maneuvering on ice was especially difficult for her. She slipped and fell on the ice when re-entering her car and instituted the action against the landowner. The Court indicated that a landowner owes no duty to an invitee who proceeds to face an obvious and avoidable dangerous condition of the land since, by his conduct, the invitee has agreed to accept the risk and to undertake to look out for himself. *See* Restatement (Second) of Torts § 343 A. In *Howell v. Clyde, supra*, a licensee of the landowner was socializing with the landowner and asked to ignite a homemade fireworks cannon. He injured himself in the process.

■ Thus, there are two components to the doctrine. The risk must be perceived, and the risk must be faced voluntarily.

In both Supreme Court cases, the risks at issue were danger-
ous, known, and obvious. Ice always is slippery, and a person
walking on ice always runs the risk of slipping and falling.
The plaintiff in *Carrender* admittedly saw the ice prior to
stepping on it. Similarly, fireworks always explode, and a
person always encounters a risk of injury from that explosion
when he uses fireworks. Thus, the plaintiff in *Howell* knew
the risk.

Furthermore, the plaintiffs in those cases proceeded to face
the risks voluntarily. The plaintiff in *Carrender* could have
parked in a non-icy area since the rest of the parking lot was
free of ice. The plaintiff in *Howell* did not have to engage in
the recreational activity of firing the cannon. *See also Jones
v. Three Rivers Management Corp.*, 483 Pa. 75, 394 A.2d 546
(1978) (patron of baseball game voluntarily assumes risk of
being hit by ball since such a risk is inherent in attending
baseball game, a recreational activity); *Kotovsky v. Ski Liber-
ty Operating Corp.*, 412 Pa.Super. 442, 603 A.2d 663 (1992)
(when one voluntarily engages in the recreational sport of
skiing, which always carries an extremely high risk of falling,
one voluntarily assumes the risk of injuries from a fall).

Thus, as Justices Flaherty and Cappy noted in *Howell,* the
problem in resolving the assumption-of-the-risk issue as a
matter of law is in determining whether the plaintiff actually
knew of the risk and whether his actions were voluntarily and
deliberately taken. There was no question in either *Howell*
and *Carrender* that actual knowledge was present.

■ However, the deposition herein did not establish that
Mr. Barrett perceived the specific risk involved and proceeded
voluntarily to face that risk. Mr. Barrett did not see the piece
of vinyl siding insulation which caused him to fall. He stated
that he was looking up at his insulation work when the
accident occurred. Furthermore, Mr. Barrett took the time to
clear a path for himself prior to starting his job. In fact, his
actions in cleaning up a path for himself establish that he did
not proceed in the face of a *known* risk. From his deposition,

it is clear that Mr. Barrett thought that he was preventing an accident by clearing a path.

Before the doctrine of assumption of the risk will be applied to prevent recovery, the evidence must establish conclusively that the plaintiff was subjectively aware of the risk. Mr. Barrett did not have subjective knowledge that he was going to slip on a piece of insulation because he subjectively thought that by clearing a path, he had eliminated that risk. Whether his actions and thoughts were reasonable involve negligence principles for the jury to resolve.

Unless the evidence establishes that the plaintiff knew he was going to encounter the risk, which is not evidenced herein, assumption of the risk does not apply. *Struble v. Valley Forge Military Academy, supra* (plaintiff could recover when evidence established that he did not have actual knowledge of the risk involved in firing a ceremonial cannon); *Long v. Norriton Hydraulics Inc., supra* (no assumption of the risk where plaintiff did not know that risk would occur and where risk was faced as part of job duties).

Order reversed. Case remanded. Jurisdiction relinquished.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting.

I respectfully dissent because I would find that appellant voluntarily assumed the risk of walking on two foot stilts on a garage floor that was covered with vinyl siding debris.

Appellant testified during his deposition that he cleared a path on the garage floor in order to prevent a slip and fall accident. Thus, he was aware of the risk involved in performing his job on a floor covered with debris and he voluntarily attempted to make the area safe. However, he unfortunately failed to remove all of the debris from his work area and, as a result, he fell and was injured.

As such, I would agree with the trial court that appellant voluntarily undertook a known and self-created risk, thereby

obviating any duty owed to him by appellees. Accordingly, I would affirm the order granting appellees' motion for summary judgment.